

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PETER QUINN ELVIK,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, *et al.*,<br><br>Defendants. | 3:10-cv-00312-RCJ-VPC<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**<br><br>October 5, 2011 |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss (#21).[1] Plaintiff opposed (#31) and defendants replied (#32). Plaintiff also filed a motion for a temporary restraining order (#17) which defendants opposed (#24). The court has thoroughly reviewed the record and the motions and recommends that defendants' motion to dismiss (#21) be granted. The court recommends that plaintiff's motion for a temporary restraining order (#17) be denied as moot.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Peter Quinn Elvik ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#7, p. 3). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging due process violations under the Fifth and Fourteenth Amendments, deliberate indifference to his medical need in violation of the Fifth, Eighth, Ninth and Fourteenth Amendments and alleges that defendants were medically negligent. *Id.* Plaintiff's claims arise out of plaintiff's attempted suicide incidents and the defendants' disciplinary and restitution charges against plaintiff. Plaintiff states in his complaint that on September 1, 2008, while he was housed at Northern Nevada Correctional Center, plaintiff cut

---
[1] Refers to the court's docket number.

his wrists in a suicide attempt (#8, p. 4). On September 2, 2008, plaintiff received stitches to his wrists and plaintiff alleges that a doctor told him that costs for the procedure were minimal. *Id.* On September 4, 2008, plaintiff was admitted to the mental health unit. *Id.* On September 5, 2008, plaintiff alleges defendants took him off suicide watch. *Id.* at 5. On September 18, 2008, plaintiff was discharged from the mental health unit and taken off his medication. *Id.* On September 29, 2008, plaintiff was found hanging from his cell in the mental health unit and flown to Renown Hospital in Reno, Nevada. *Id.* On October 10, 2008, plaintiff was transferred to Ely medical clinic and placed on suicide watch. *Id.* On November 5, 2008 plaintiff received an account statement which showed his medical costs in the amount of $51,298.93 (#7, p. 3). Plaintiff's two suicide attempts took place at Northern Nevada Correctional Center in Carson City, Nevada.

Plaintiff names the following defendants: the State of Nevada, the NDOC, NDOC Director Howard Skolnik, NDOC Associate Director Gregory Cox, ESP Warden E.K. McDaniel, ESP Associate Warden Adam Endel, and ESP caseworkers Claude Willis and Mark Drain (#8). Plaintiff filed his original complaint in state court on April 28, 2010, and defendants removed the case to federal court (#1). The District Court screened the complaint and dismissed some claims and ordered the filing of the complaint as to the remaining claims (#7). [2] Plaintiff's remaining claims are discussed below.

In count I, plaintiff alleges that defendants Drain, Endel, Willis, Cox, and McDaniel violated plaintiff's Fourteenth Amendment due process rights when they denied him a hearing prior to finding him guilty of self-mutilation (#8, p. 8). Plaintiff also claims that defendants violated his due process rights when they failed to provide him with a hearing prior to assessing him with restitution charges for his medical bills. *Id.* Plaintiff believes he was entitled to a hearing and an itemization of the medical charges before his account was charged. *Id.* On November 5, 2008, plaintiff received a copy of a document titled "Inmate Account Statement" which showed restitution charges against

---

[2] The court dismissed the following claims with prejudice without leave to amend: claims against the state of Nevada and NDOC, claims against Director Skolnik, Fifth Amendment claims, and a deliberate indifference claim pursuant to the Ninth and Fourteenth Amendments. The court dismissed plaintiff's Eighth Amendment deliberate indifference claim with leave to amend. *Id.*

2

1  plaintiff (#8, p. 5). Plaintiff states that $51,298.93 was assessed from his inmate account. *Id.*

2  Defendants file a motion to dismiss and maintain that plaintiff's due process arguments fail
3  as a matter of law because plaintiff admitted to causing his injuries and was lawfully charged for his
4  medical bills in accordance with Nevada law and Nev. Rev. Stat. § 209.246 (#32, p. 3, 5).
5  Defendants assert that under Nevada law, plaintiff is required to pay the medical charges associated
6  with self-inflicted injuries, had prior notice that he would be charged for self-injury, and has a post-
7  deprivation remedy (#21). Plaintiff opposes the motion, and maintains that he has a due process
8  right to a hearing regarding his disciplinary charges (#31, p. 5). Plaintiff asserts that he is entitled
9  to a timely and meaningful hearing on the matter of restitution and the charges made by third party
10 vendors. *Id.* at 7.

11 In count II, plaintiff alleges that defendants were negligent when they took him off his
12 medication, provided him the means to hang himself, and failed to properly supervise him after
13 plaintiff previously attempted to commit suicide (#8, p. 11). Plaintiff claims that defendants' acts
14 and omissions directly and proximately caused plaintiff's second suicide attempt and the resulting
15 restitution damages. *Id.*

16 Defendants file a motion to dismiss, and argue that plaintiff's negligence claim fails because
17 plaintiff did not properly exhaust his administrative remedies, named the wrong parties in his
18 lawsuit, and that plaintiff's medical negligence claim requires a medical expert affidavit according
19 to Nevada law (#21, p. 3). Plaintiff asserts that he satisfied the exhaustion requirements of the PLRA
20 and that there exist too many unresolved issues to justify a dismissal based on a failure to exhaust
21 (#31, p. 9). Plaintiff argues that he properly exhausted his due process claim which defendants do
22 not contest. *Id.* at 8. Plaintiff further claims that defendants have not shown that there exist books
23 in the law library referencing the PLRA and that plaintiff did not have clear direction regarding
24 exhaustion. *Id.* at 13. Defendants reply that plaintiff's negligence claim fails as a matter of law due
25 to procedural errors discussed in their motion to dismiss (#32). They assert that plaintiff was aware
26 of the grievance process and never put the defendants on notice of his negligence claim. *Id.* at 7.

27 Plaintiff also asks the court to grant a temporary restraining order to "prevent defendants
   from continuing the seizure of virtually all funds" from plaintiff's inmate trust fund account (#17,

p. 1). Defendants oppose plaintiff's motion and argue that plaintiff does not address any of the requirements necessary in obtaining injunctive relief and that he does not meet the requirements (#24, p. 5). Defendants also assert that they have never taken the entire amount of money out of plaintiff's trust accounts in order to pay medical restitution. *Id.*

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Motion to Dismiss

"A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law." *North Star Int'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 556).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court employs to a two-pronged approach. *Id.* First, the court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 1950. In other words, for the nonmovant to succeed, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Thus, a complaint may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Grp. v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).

Under Section 1983, a plaintiff must allege that (1) defendants subjected him to the deprivation of a right, privilege, or immunity guaranteed by the U.S. Constitution or federal law, and (2) that the defendant acted under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see*

4

*also Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A *pro se* plaintiff's second amended complaint must be construed liberally and can only be dismissed where it appears certain that the plaintiff would not be entitled to relief. *Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 807 (9th Cir. 1996). Although allegations of a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by a lawyer, *Haines v. Kerner,* 404 U.S. 519 (1972), sweeping conclusory allegations will not suffice. *Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir.1988).

### 2. Exhaustion

Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional requirement, and defendants bear the burden of raising and proving that the plaintiff has not exhausted. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003), *cert denied*, 540 U.S. 810 (2003). Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; rather, it is the defendant's responsibility to raise the issue in a responsive pleading. *Jones*, 549 U.S. at 216.

Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim, and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt*, 315 F.3d at 1119. The court may look beyond the pleadings to decide disputed issues of fact without converting the motion into one for summary judgment; however, "if the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.* at 1119-20, *as noted in O' Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see also Rizta v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988) ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.").

#### a. Prison Litigation Reform Act of 1996

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Although once within the discretion of the district court, the exhaustion of administrative

5

1  remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need
2  not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534
3  U.S. 516, 524 (2002) (citing *Booth*, 532 U.S. at 739-40 n.5). Even when the prisoner seeks remedies
4  not available in the administrative proceedings, notably money damages, exhaustion is still required
5  prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the Supreme Court
6  has strictly construed section 1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions
7  into statutory exhaustion requirements where Congress has provided otherwise.").

8  Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit. The
9  PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds
10 out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S.
11 81, 89 (2006). Requiring exhaustion prior to filing suit furthers the congressional objectives of the
12 PLRA as set forth in *Porter*, 534 U.S. at 524-25. *See id.* at 1200.

**b. NDOC Procedures**

14 "Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by
15 the prison grievance process itself." *Jones*, 549 U.S. at 218. The NDOC grievance procedure is
16 governed by AR 740 (#21, Ex. C). Defendants attach to their motion the relevant versions of AR
17 740 (#21). In order for plaintiff to exhaust available remedies at the time of his injury, AR 740.05
18 requires inmates to include "[a]ll documentation and factual allegations available to the inmate"
19 (#21, Ex. C, p. 29).

20 The NDOC policy also states that an inmate shall file an informal grievance within six
21 months if the issue involves personal property damage or loss, personal injury, medical claims or any
22 other tort claims, including civil rights claims. *Id.* Upon completion of the grievance process,
23 inmates may pursue civil rights litigation in federal court.

**B. Analysis**

**1. Count I - Fourteenth Amendment Claims**

26 The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary
27 government action by prohibiting states from depriving people of "life, liberty, or property without
   due process of law." U.S. Const. amend. XIV. In order to prevail on a claim of deprivation of

property without due process of law, a plaintiff must first establish the existence of a constitutionally protected interest in the property. Prisoners retain certain property interests despite being incarcerated. It is well settled that inmates have a protected liberty interest in the funds in his prison account. *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1984). Once a protected property interest is found, the court need only decide what process is due under the Fourteenth Amendment. *Quick*, 754 F.2d at 1523. This is a question of law. *Id.*

The law provides that no due process violation occurs if the government negligently deprives an inmate of his protected property. *Daniel v. Williams*, 474 U.S. 327 (1986) (*overruling Parratt v. Taylor*, 451 U.S. 527 (1981). The Supreme Court has also held that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Fourteenth Amendment's procedural due process requirements provided the state makes available a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). This is because a state cannot provide a pre-deprivation hearing for a property loss that the state cannot predict. *Id.* at 532.

### a. Procedural Due Process

In count I, plaintiff alleges that defendants violated his due process rights when they failed to give him a hearing before disciplining him for inflicting injuries upon himself (#8, p. 8). Plaintiff admits in his complaint that he attempted suicide on the two occasions for which he was charged medical restitution (#8, p. 10). Plaintiff relies on this fact in his medical negligence claim. *Id.* Defendants assert that since plaintiff admits to these events, no hearing was necessary (#21, p. 5). Whether or not plaintiff injured himself has never been in dispute. Plaintiff fails to state a due process claim regarding the filing of disciplinary charges.

Plaintiff further claims that defendants violated his due process rights when he was not afforded a hearing prior to being assessed restitution for his medical bills associated with his two suicide attempts (#8, p. 9). Plaintiff believes he should have had a hearing to challenge the amounts billed by outside, third-party medical providers. However, NDOC responds that they do not have the authority to force third-party medical providers to change their rates and that plaintiff's dispute is with the third-party providers (#32, p. 6). The court agrees. Plaintiff further claims that he never

7

received any receipts or itemized bill of the charges (#8, p. 8). While defendants do not dispute that plaintiff has a protected property interest in his inmate account, they argue that this interest is not absolute. Defendants charged plaintiff in accordance with Nevada law and N.R.S. § 209.246(1)(b)(1) which mandated defendants to "establish by regulation criteria for a reasonable deduction from money credited to the account of an offender to repay medical costs inflicted by the offender upon himself." In response, NDOC promulgated AR 245.02 and Medical Directive 727. AR 245.02 provides that "[i]mates will be charged 100% of the cost for all medical examination, diagnosis or treatment for injuries which result from . . . self inflicted injuries." (#21, Ex. A, p. 18).[3] Medical Directive 727 provides the procedure for NDOC to charge inmates in accordance with Nevada law and AR 245.02. Pursuant to Medical Directive 727, NDOC is responsible for charging inmates medical restitution for "qualifying events" (#21, Ex. B, p. 21). The directive establishes rates for restitution and does not require that restitution be assessed solely through the disciplinary process. *Id.* Once plaintiff injures himself, he is automatically responsible for the medical costs. Plaintiff had notice that he would be responsible for one hundred percent of his medical charges related to self-injury (#21, Ex. A, p. 18). Further, prison regulations set out the rates of restitution (#21, Ex. B, p. 22).

Defendants assert that according to *Dease v. MacArthur*, plaintiff is not entitled to a pre-deprivation hearing prior to the assessment of restitution charges where there are post-deprivation remedies in place to satisfy due process. 1827135, 7-11 (D.Nev. 2007) (unpublished opinion); *see also Parratt v. Taylor*, 451 U.S. 527, 538 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Defendants maintain that they make available a meaningful post-deprivation remedy where plaintiff can dispute medical restitution by filing an accounting inquiry and requesting a reversal of any improper charges (#32, p. 6). *See Dease*, 1827135, 4 (finding that procedures such as an accounting inquiry and inmate grievance procedures are adequate post deprivation remedies). Defendants did not violate plaintiff's due process rights because he had pre-

---

[3] The court takes judicial notice of the Administrative Regulations and NDOC Medical Ddirective. *See* FED. R. EVID. 201(b).

deprivation notice and adequate post-deprivation remedies.

Whether a pre-deprivation hearing is constitutionally required is a question of law. *See Belnap v. Chang*, 707 F.2d 1100, 1102 (9th Cir. 1983). Because plaintiff failed to show that he was entitled to a pre-deprivation hearing, even if the facts alleged in his complaint are true, his claim fails as a matter of law. The court recommends that defendants' motion to dismiss (#21) count I be granted because plaintiff fails to state a due process claim regarding his disciplinary charges and resulting restitution charges.

### 2. Count II - Negligence Claim

In count II, plaintiff claims defendants were negligent when they took him off his medication, provided him the means to hang himself and failed to properly supervise him (#8, p. 11). Defendants argue that plaintiff's negligence claim fails as a matter of law on several grounds. Defendants claim that plaintiff failed to exhaust administrative remedies, sues the wrong parties, and failed to attach a medical expert affidavit as required by Nevada law (#21).

#### a. Plaintiff's exhaustion of administrative remedies

Defendants assert that plaintiff failed to properly exhaust his administrative remedies because he did not allege facts giving rise to a negligence claim in his grievance forms (#21, p. 13). Defendants claim that plaintiff failed to put defendants on notice that he was complaining that defendants breached a duty owed to him by failing to properly supervise him and that they were responsible for his second suicide attempt. *Id.* The court reviewed plaintiff's inmate file and found the following relevant informal grievance: 1) 20062792071 which stated that "grievant is lock[ed] up in the med/mental unit, grievant is not getting any treatment." The NDOC denied the grievance and responded that "plaintiff was housed in the [mental health unit] prior to [his] transfer in order to maintain [his] safety." (#21, p. 46). Plaintiff filed a first and second level grievance stating that he was discharged from the mental health unit but did not have legal access or hygiene. *Id.* Plaintiff further complained about his conditions while he was on suicide watch. *Id.*

The Supreme Court held in *Jones v. Bock* that a prison's own grievance process, not the

9

PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. 549 U.S. 199, 218 (2007). AR 740 states that in filing a grievance form, an inmate should include all factual allegations available to the inmate (#21, p. 29). Plaintiff's factual allegations were not sufficient enough to put defendants on notice that he was complaining about defendants' action which he claims led to his suicide attempt. While an inmate need not articulate a precise legal theory to properly exhaust under the Prison Litigation Reform Act (PLRA), a grievance only suffices if it alerts the prison to the nature of the wrong for which redress is sought. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Plaintiff's grievance form did not put defendants on notice of plaintiff's medical negligence lawsuit against defendants. Plaintiff states in his complaint that defendants "breached their duty by failing to properly supervise and care for him, including, but not limited to, taking him off his medication, and providing him the means and opportunity to hang himself, which led to his second suicide attempt" (#8, p. 10). The complaints in his grievance form did not adequately alert defendants as to plaintiff's present factual allegations.

Defendants also argue that an inmate must pursue resolution of his personal injury claim within six months according to AR 740. Plaintiff was removed from suicide watch and taken off his medication in September 2008 (#8, p. 5). Plaintiff's claim is abandoned because he failed to file a timely grievance and failed to properly exhaust his administrative remedies. *Pierce v. Directors Of Corrections*, 2010 WL 322233, 3 (D.Nev. 2010) (finding that the failure to timely file a grievance which was not addressed on the merits constitutes a failure to exhaust administrative remedies, and dismissal of that claim is proper). Count II of plaintiff's complaint should be dismissed without prejudice because plaintiff failed to exhaust administrative remedies.

Even if plaintiff had exhausted his administrative remedies, his negligence claim fails as a matter of law on other grounds as well.

    **b. Count II - Parties amenable to medical negligence suit**

Defendants claim that plaintiff has sued the wrong parties for negligence. Plaintiff sues defendants, all non-medical professionals at ESP, for incidents that occurred at Northern Nevada Correctional Center in Carson City, Nevada (#21, p. 10). Plaintiff alleges that defendants breached

a duty to protect him as health care professionals (#8, p. 10). However, the defendants are not health care professionals and do not owe a medical duty to plaintiff. Defendant Cox was the deputy director of NDOC in Las Vegas. Defendants Drain, Endel and McDaniel were correctional officials at ESP. Defendant Willis was a case worker at ESP. Defendants assert that the named parties cannot "prescribe psychotropic medications to plaintiff or take him off such medications; and none of these defendants had anything whatsoever to do with plaintiff while he was housed at NNCC." (#21, p. 11). The court recommends that plaintiff's negligence claim be dismissed because plaintiff names the wrong parties as defendants.

### c. Count II - Failure to attach required medical expert affidavit

Defendants argue that plaintiff's negligence claim fails under Nevada law because he did not attach an affidavit from a medical expert to his complaint as required by N.R.S. § 41A.071 (#21, p. 12). Plaintiff's claim for negligence is a medical negligence claim and without an attached medical expert affidavit, plaintiff's claim fails and should be dismissed. *Washoe Med. Ctr. v. Dist. Ct.*, 122 Nev. 1298, 1300, 148 P.3d 790, 792 (2006) (finding that the district court must dismiss a medical malpractice complaint filed without a supporting medical expert affidavit). Plaintiff's complaint alleging negligence should be dismissed by operation of law and therefore, it cannot be amended. *Id.* The court recommends that plaintiff's negligence claim be dismissed because plaintiff failed to attach a medical expert affidavit as required by Nevada law.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff fails to state a claim for violation of his due process rights in count I because defendants acted in accordance with Nevada law and prison regulations. Plaintiff had prior notice of the charges and a post-deprivation remedy. Plaintiff fails to state a claim for negligence because he failed to exhaust, sued the wrong parties, and failed to attach an medical expert affidavit to his complaint. As such, the court recommends that defendants' motion to dismiss (#21) count I and count II be **GRANTED**. The court recommends that plaintiff's motion for a temporary restraining order (#17) be **DENIED** as moot. The parties are advised:

11

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss plaintiff's due process and negligence claims (#21) be **GRANTED**.

**IT IF FURTHER RECOMMENDED** that plaintiff's motion for a temporary restraining order (#17) be **DENIED** as moot.

DATED: October 5, 2011.

_____
UNITED STATES MAGISTRATE JUDGE